# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ARELI HERNANDEZ OCAMPO,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

Case No. 5:26-cv-03489-MBK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Areli Hernandez Ocampo, a 28-year-old native and citizen of Mexico, is currently in custody of the Department of Homeland Security at the Adelanto Detention Facility. Ms. Ocampo entered the United States with her parents when she was two years old and has resided continuously in Santa Ana, California, with her three younger siblings who are U.S. citizens. Petitioner previously held DACA status until 2017. Ms. Ocampo graduated from high school, and thereafter became the primary wage earner for her family, after her father's sudden and unexpected death in July 2016. She maintained stable employment as a home cleaner and had no criminal arrests

or convictions. On February 18, 2026, immigration authorities apprehended Petitioner at her place of work in Irvine, California.

Following her arrest, Department of Homeland Security ("DHS") officers served Petitioner with a Notice to Appear ("NTA"), on February 19, 2026, charging her as removable under 8 U.S.C. §§ 1182 (a)(6)(A)(i) and (a)(7)(A)(i)(I). She is in pending removal proceedings and has no final order of removal. On May 4, 2026, Petitioner requested a custody redetermination hearing before an Immigration Judge ("IJ"). On May 12, 2026, the IJ denied the request, on the basis that it lacked jurisdiction. Dkt. 1-4 (Order of the IJ).

Petitioner filed the instant habeas action on June 24, 2026, alleging that her initial arrest and ongoing confinement violate 8 U.S.C. § 1226(a), the Due Process Clause, and the Fourth Amendment. Respondents filed an answer in which they state they are not presenting an opposition at this time.

In light of Respondents' non-opposition, the Court finds that Petitioner's detention violates due process and 8 U.S.C. § 1226(a). Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Ms. Ocampo's immediate release and preventing her re-detention absent a hearing at which the Government must justify her detention by "clear and convincing" evidence.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Areli Hernandez Ocampo is a 28-year-old native and citizen of Mexico. Dkt. 1 at 1. Ms. Ocampo entered the United States with her parents when she was two years old. *Id.* at 6. Since then, Ms. Ocampo has resided in the Santa Ana area with her family, including three younger United States citizen siblings who are 26, 18, and 14 years old. *Id.* at 7. Petitioner is a DACA recipient and renewed her DACA status in 2012 and 2014. *Id.* at 7. Ms. Ocampo attended and graduated from high school in Santa

Ana in 2016, and planned to enroll in Santa Ana College, but was unable to pursue higher education when her father suddenly passed away in July 2016. *Id.* Ms. Ocampo became the primary financial provider for her family following her father's death. *Id.* at 7. Petitioner's father's death devastated the family, and her mother fell into a severe depression. Dkt. 1-1 (Declaration of Petitioner). Petitioner's mother is unable to work due to heart failure and coronary artery disease diagnoses, which cause shortness of breath, chest pains, and extreme fatigue. Dkt. 1 at 7. Petitioner also acts as her mother's caregiver—providing transportation to medical appointments, household assistance, daily care, and financial support. *Id.* These overwhelming responsibilities inhibited Petitioner's ability to renew her DACA status in 2017. *Id.*

On the morning of February 18, 2026, Petitioner was a passenger in a vehicle with four of her co-workers as they commuted to work in Irvine. Dkt. 1-1 at 2. As the car turned to enter the freeway, the women heard emergency vehicle sirens and pulled to the side of the road. *Id.* Three unmarked cars suddenly surrounded the vehicle—pulling in front, to the side, and behind the vehicle. *Id.* Several men exited the vehicles, wearing face masks and plainclothes. *Id.* The men did not clearly identify themselves as Immigration and Customs Enforcement ("ICE") officers or police officers when they stopped the vehicle. *Id.* at 3. Immediately, the officers demanded to see the identification documents for all of the passengers in the vehicle, stating that they were looking for a woman named Maria. *Id.* They held up a sheet of paper with a photo of a Hispanic woman who did not match any of the women in the vehicle. *Id.* The women informed the officers that they "ha[d] the wrong people," and that the woman in the photo was not any of the women in the car. *Id.* Petitioner did not provide the officers with her name or any

identification because the officers did not present a warrant or provide any explanation for their stop of the vehicle. *Id*. The officers insisted that Petitioner "looked like" the woman on the sheet of paper, and asked to see her identification, but she continued to refuse to provide it to them. *Id*.

While still surrounded by the ICE officers, Petitioner called the Santa Ana Police Department to report the incident. *Id*. Neighbors gathered around their car, began honking, recording the officers on their phones, and demanding the officers release Petitioner and the other women in the vehicle. *Id*. The officers eventually let the vehicle go, only to follow it onto the freeway and the entire commute to the women's place of work in Irvine. *Id*. Once the vehicle pulled into the parking lot at Petitioner's work, more ICE "vehicles suddenly appeared and blocked [them] in." *Id*. The officers opened all the car doors, ordered the women out of the car, and arrested Petitioner, along with two of the other women. *Id*. When the officers opened the car doors, Petitioner was on the phone with her aunt, but told the officers she would exit the vehicle on her own and comply with their orders. *Id*. Instead, one of the officers grabbed her hand and placed Petitioner under arrest. *Id*. At no point did the officers provide Petitioner with a warrant for her arrest or any explanation for her arrest and detention. *Id*.

Petitioner has been detained at the Adelanto ICE Processing Center without a bond hearing since then. *Id*. Petitioner's removal proceedings are pending, and she has no final order of removal. *Id*.

Following her arrest at her workplace, immigration authorities transported Ms. Ocampo to a processing station in Santa Ana, and thereafter transferred her to Adelanto Detention Facility. *Id*. Petitioner includes the DHS Form 1-213 as an attachment to the Petition. Dkt. 1-3. The form states

4

that Petitioner initially "came to the attention of ICE during a surveillance operation," while ICE was attempting to locate another individual. *Id.* at 3.

On February 19, 2026, DHS served Petitioner with an NTA, charging her as removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I) as a noncitizen present in the United States without being admitted or paroled and without valid entry documents. Dkt. 1-2 (NTA). DHS initiated removal proceedings against Petitioner pursuant to 8 U.S.C. § 1229(a), and has no final order of removal. Dkt. 1 at 10.

Petitioner did not have any pre-deprivation hearing when she was detained by ICE, or any time thereafter. *Id.* Therefore, on or around May 4, 2026, Petitioner requested a custody redetermination hearing before an IJ. *Id.* The IJ denied Petitioner's request, finding that it did not have jurisdiction under *Matter of Yajure-Hurtado,* 29 I&N Dec. 216 (BIA 2025), because the IJ determined that Petitioner entered the United States "surreptitiously" and therefore fell within the requirements of the Immigration and Nationality Act § 235(b)(2)(A). *Id.* at 10; Dkt. 1-4.

While she has been detained at Adelanto, Petitioner has experienced several severe bilateral ear infections, causing pain that has affected her sleep and hearing. Dkt. 1-1 at 4. Petitioner has experienced delayed and limited treatment for these ear infections while detained at Adelanto. *Id.* Additionally, Petitioner's family continues to experience "severe, ongoing, and irreparable harm" resulting from her ongoing detention, as her mother and siblings all depend on her for emotional, financial, physical, and household support. *Id.*

Prior to her detention, Petitioner maintained stable employment, developed significant community and family ties in her Santa Ana neighborhood, and has no criminal arrests or convictions. Dkt. 1 at 7-10. She

further states that she "has no meaningful ties to Mexico," as she has not lived there since she was two years old. Dkt. 1-1 at 4.

Petitioner filed the instant habeas petition on June 24, 2026. Dkt. 1. Petitioner raises three claims for relief in the Petition: (1) her detention and continued confinement violates 8 U.S.C. § 1226(a) and its implementing regulations; (2) her prolonged detention without notice or hearing violates the Fifth Amendment's Due Process Clause; and (3) her arrest and detention violated the Fourth Amendment. *Id.* at 18-24. Among other relief, Petitioner requests that the Court issue an order requiring her immediate release and enjoining Respondents from re-detaining Petitioner absent a notice and opportunity to be heard before a neutral adjudicator where the Government bears the burden of proof by clear and convincing evidence. *Id.* at 25.

The Court issued General Order 26-05 and briefing schedule on June 24, 2026. Dkt. 5. Respondents filed an Answer on July 1, 2026. Dkt. 8. In their answer, Respondents state that they "are not presenting an opposition argument at this time. Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitioner required by the General Order, no more filings or proceedings will be necessary in this matter." *Id.* at 2.

## II. DISCUSSION

Petitioner argues that her arrest and detention violated 8 U.S.C. § 1226(a), due process, and the Fourth Amendment. Dkt. 1. At 18-24. Based on these violations, Petitioner argues she is entitled to release and a prohibition on her re-detention absent a hearing where the Government shows that her detention is warranted by "clear and convincing" evidence. *Id.* at 24-25. Respondents state that they "are not presenting an opposition argument at

this time." Dkt. 8 at 2.

Respondents' non-opposition is a concession that Petitioner is entitled to relief on her claims. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

In light of Respondents' non-opposition, the Court finds that Petitioner's detention violates due process. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). The Supreme Court

7

has recognized only two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *Id*. at 690-92.

Here, Petitioner argues—and Respondents do not dispute—that her detention is not warranted on danger or flight risk grounds. Dkt. 1 at 22-23. Accordingly, the Court concludes that Petitioner's ongoing detention serves no legitimate purpose and she is entitled to release on her due process claim.

The Court also finds that Petitioner's ongoing detention violates 8 U.S.C. § 1226(a). Section 1226(a) and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances a legitimate purpose. The statute provides that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When a person is apprehended under Section 1226(a), ICE officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Under the regulations, the ICE officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id*. After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

8

1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

Here, Petitioner alleges—and Respondents do not dispute—that the Government has denied Petitioner the procedural protections she is due under Section 1226(a). On May 12, 2026, the IJ found that it lacked jurisdiction to conduct a bond hearing in Petitioner's case pursuant to *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025). Dkt. 1-4. However, this Court has rejected *Matter of Yajure-Hurtado* and held that noncitizens like Petitioner are entitled to a bond hearing under Section 1226(a). *See Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The final judgment in *Maldonado Bautista* has preclusive effect here because Petitioner and Respondents are parties in *Maldonado Bautista. See Granados v. Warden et al.*, No. 5:26-CV-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("it appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment"); *Miguel Angel Cortez Lozano v. Ernesto Santacruz Jr. et al.*, No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026). *See generally De Corral v. Woosley*, No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second) of Judgments § 33).

As multiple courts have found, the Government's denial of a noncitizen's rights under Section 1226(a) warrants their release. *See, e.g.*, *Alberto v. Mattos*, No. 2:26-cv-01441-RFB-BNW, 2026 WL 1847394, at *6-7 (D. Nev. June 26, 2026) ("Federal Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the initial custody determination

requirement establishes a lawful basis for detention in the first instance. The Court will not bless Federal Respondents' 'detain first, justify later' approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process."; *Martinez v. Giles*, No. 26-cv-2090-AS, Dkt. 9 (C.D. Cal. May 8, 2026). Consistent with this authority, and in light of Respondents' non-opposition, the Court finds that Petitioner is entitled to release on her Section 1226(a) claim.[1]

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's detention violated due process and Section 1226(a). Accordingly, the Court ORDERS the following: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Areli Hernandez Ocampo's (A# 204-393-376) immediate release and prohibiting her re-detention absent a hearing at which the Government must justify her detention by "clear and convincing" evidence; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: July 1, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

---

[1] Because the Court concludes that Petitioner is entitled to release on due process and statutory grounds, it declines to address her Fourth Amendment claim.

10